**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **MELISSA M NEWELL** | **CASE NO. 6:20-CV-01525** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **ACADIANA PLANNING COMMISSION INC** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# MEMORANDUM RULING

The present matter before the Court is a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [ECF No. 17] filed by defendant Acadiana Planning Commission, Inc. ("APC"). For the reasons explained below, the Motion to Dismiss is GRANTED in part and DENIED in part.

## I.
## BACKGROUND

Plaintiff Melissa Newell was hired by defendant APC—or APC's predecessor—in April 2014.[1] Newell contends that she was "repeatedly passed over for promotional opportunities, despite superior qualifications, due to her race and/or religion."[2] Newell also contends that she was subjected to a "hostile work environment, again due to her race and/or religion."[3] Newell alleges that she complained about these discriminatory actions and harassment to APC's Board of Directors on or around October 11, 2018.[4] Newell further alleges that APC's Director requested that she withdraw her complaint to the Board and "just pray about it."[5] Newell contends that APC then retaliated against her for filing a complaint with the Board by terminating her employment on

[1] Plaintiff's Complaint alleges her hire date was in April 2014 but based upon APC's response to the EEOC Charge (ECF No. 3-2), she was actually hired in April 2015.
[2] ECF No. 1 at 2.
[3] *Id.*
[4] *Id.*
[5] *Id.*

or about November 1, 2018.[6] Newell filed a charge with the Equal Employment Opportunity Commission ("EEOC") and Louisiana Commission on Human Rights on August 12, 2019 (the "EEOC Charge"). On September 3, 2020, the EEOC closed Newell's file and issued a "right to sue" letter.[7] Newell commenced the present action under Title VII on December 1, 2020, and APC filed a motion to dismiss Newell's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. APC filed its First Motion to Dismiss on March 26, 2021.[8] The Court subsequently entered a Memorandum Ruling denying APC's First Motion to Dismiss without prejudice and ordering Newell to file an amended complaint to cure deficiencies outlined in the Court's ruling.[9] Newell filed a verified "Amended Complaint" on March 12, 2022.[10] APC then filed its Second Motion to Dismiss under Rule 12(b)(6).

At this point, the Court notes that, while styled an "amended complaint," Newell's current complaint is essentially a supplemental complaint that expressly incorporates all of the allegations of her original complaint without repeating the allegations in the original complaint.[11] This "supplemental complaint" asserts additional allegations to support Newell's claims and address the Court's Memorandum Ruling. Ordinarily, "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."[12] Where, as here, an amended complaint adopts and incorporates by reference the plaintiff's original complaint, both complaints are operative and must be considered in connection with a motion to dismiss.[13] Considering Newell's

---

[6] *Id.*
[7] *Id.* at 12.
[8] ECF No. 3.
[9] ECF No. 11.
[10] ECF No. 13.
[11] *Id.* at 1 ("Plaintiff incorporates herein all allegations, averments and representations contained in her original Complaint, in globo and in extenso, and further amends same....").
[12] *King v. Dogan*, 31 F.3d. 344, 346 (5th Cir., 1994).
[13] *Hall v. Louisiana*, 974 F.Supp.2d. 978, 991 (M.D. La. 2013).

original and amended complaints together creates a critical discrepancy in her timeline. Newell's original complaint states that she lodged her complaint with APC's board in October ***2020*** and was terminated November 1, ***2020***.[14] Newell's amended complaint appears to identify the dates of her complaint and termination as October ***2018*** and November 1, ***2018***, respectively, without addressing the 2020 dates alleged in her original complaint.[15] Similarly, Newell's amended complaint appears to allege conduct and statements made in late 2018 and early 2019—*after* she was allegedly terminated on November 1, 2018.[16] Based on Newell's EEOC charge, it appears that the October and November 2018 dates for her complaint and termination are the correct dates, and the Court will rely on those dates in addressing the sufficiency of Newell's allegations.[17]

## II.
## RELEVANT STANDARD

Under Rule 8(a)(2) of the Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Accordingly, to "survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[18] The facts alleged, taken as true, must state a claim that is plausible on its face.[19] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[14] ECF No. 1 at 2.
[15] ECF No. 13 at 3.
[16] *Id.* at 2-4.
[17] Newell's EEOC charge was expressly referenced in her original complaint and was attached as an exhibit to APC's motion to dismiss. ECF No. 3-2.
[18] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007).
[19] *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011).

defendant is liable for the misconduct alleged."[20] A complaint is not sufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."[21]

## III.
## DISCUSSION

### A. Title VII Disparate Treatment Claims.

APC first challenges Newell's disparate treatment claims under Title VII. Newell alleges that she was subjected to unlawful discrimination on account of race and religion.[22] Title VII provides that "it shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion ... or national origin."[23] An employer's action will be found unlawful if the employee can demonstrate that race or religion was a "motivating factor" for an adverse employment action, even if the employer was also motivated by other lawful factors.[24] The pleading standard for a Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*[25]—not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green.*[26] Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status."[27] While *McDonnell Douglas* does not govern

---

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009).
[21] *Id.* (quoting *Twombly*, 550 U.S. at 554-57).
[22] Although Newell does not expressly identify herself as an atheist, her allegations suggest that she was harassed because she did not have religious beliefs. Although atheism is not a formal religion—"[l]iterally, it represents antipathy to religion"—discrimination against employees because of atheistic beliefs is prohibited under Title VII. *Williams v. Allied Waste Serv.*, No. 1:09-CV-705, 2010 WL 3257733, at *7 (E.D. Tex. June 30, 2010) (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 91 n. 4 (1977)); *see also Young v. Southwestern Savings and Loan Ass'n*, 509 F.2d 140, 142 (5th Cir.1975) (applying Title VII to religious discrimination claim based on atheism).
[23] 42 U.S.C. § 2000e–2(a).
[24] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing 42 U.S.C. § 2000e-2(m)).
[25] 534 U.S. 506 (2002).
[26] 411 U.S. 792 (1973).
[27] *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quotations omitted) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

a Rule 12(b)(6) analysis of the adequacy of a plaintiff's Title VII allegations, courts have looked to *McDonnell Douglas* in assessing a plaintiff's allegations where, as here, those allegations rely on circumstantial evidence of discrimination.[28] The *McDonnel Douglas* framework requires a plaintiff to first establish a prima facie case of discrimination by showing that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she was discharged or subject to an adverse employment action by her employer; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside of the protected group.[29]

**1. Newell's Promotion-related Claims.**

APC first challenges Newell's Title VII "failure to promote" claims. Newell alleges that "she was repeatedly passed over for promotional opportunities, despite superior qualifications, due to her race and/or religion."[30] Specifically, she alleges that "in late 2018 and early 2019, throughout her employment at APC … [she] stated her … desire to be considered for promotion to other position(s) within APC, when such positions became available, but [Monique Boulet] and APC failed to notify [her] when such potential promotions became available."[31] Newell further alleges that "when a Director of Communications position opened up, believed to be in late 2018 and early 2019, again no APC email was sent out to Plaintiff, and Ms. Boulet again failed to inform Plaintiff of the opening, or to consider her for the position, until it was too late because interviews were already underway and the deadline to apply had expired."[32]

---

[28] *Cicalese*, 924 F.3d at 767 ("In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim.") (quoting *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)).
[29] *Id.*; *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512 (5th Cir.2001).
[30] ECF No. 1 at 2.
[31] ECF No. 13 at 1. Boulet was APC's Chief Executive Officer at the time.
[32] *Id.* at 2.

Newell, however, does not allege that she actually applied for any promotions and that her applications were denied. Failure to apply for a disputed promotion will bar a failure-to-promote claim absent a showing that applying for the promotion would have been a "futile gesture."[33] This "futile gesture" exception requires Newell to show that she was deterred from applying for a promotion "by a known and consistently enforced policy of discrimination."[34] Newell only identifies one specific promotion opportunity in her amended complaint—APC's Director of Communications position in 2018—but acknowledges that she did not apply for the position because she learned of the opening after the application deadline.[35] Newell's amended complaint does not identify any other specific promotion opportunity where (1) she applied for the promotion, and (2) her application was denied.[36] Nor does Newell plead any facts showing a "known and consistently enforced policy of discrimination" that would have made her application for a promotion a futile gesture.[37] For example, Newell has not alleged that APC had a consistently-enforced policy of concealing promotion opportunities or discouraging members of her protected group from applying for promotions. While Newell does allege that Boulet and APC failed to inform her of promotion opportunities, this allegation alone does not show that an application

---

[33] *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 406 (5th Cir.1999); *see also Grice v. FMC Techs. Inc.,* 216 Fed. App'x 401, 406 (5th Cir.2007) (unpublished).

[34] *Shackelford,* 190 F.3d at 406 (citing *Teamsters v. United States,* 431 U.S. 324, 363–66 (1977)).

[35] ECF No. 13 at 2. The Court notes that, as explained in its Memorandum Ruling on APC's first motion to dismiss [ECF No. 11 at 6-8], Newell did not timely exhaust her administrative remedies with respect to a claim based on this specific promotion opportunity.

[36] As the Court noted in its Memorandum Ruling on APC's first motion to dismiss, Newell's complaint includes no facts identifying the openings for which she applied, whether she was qualified for those specific openings, whether those openings were merely lateral transfers, or whether someone outside her protected class was selected for the any of the openings. *Grice,* 216 F. App'x 401, 406–07 (the court noted that there was no evidence that the plaintiff "actually applied for a position and was not promoted."); *Knox v. PHC-Cleveland, Inc.,* 24 F. Supp. 3d 584, 589–90 (N.D. Miss. 2014) ("'Title VII was not enacted to address every employment decision,' such as an employer's denial of an employee's request for a purely lateral transfer.") (quoting *McFall v. Gonzales,* 143 Fed. App'x 604, 608 (5th Cir. 2005)). Newell's amended complaint does not cure these deficiencies.

[37] *Shackelford,* 190 F.3d at 406.

would have been a futile gesture.[38] In sum, the lack of any factual allegations showing that Newell applied for a promotion and was denied is fatal to her promotion-related claims.

**2. Newell's Termination Claim.**

APC next challenges Newell's claim that she was terminated on the basis of race and religion. Specifically, she alleges that "[o]n or about September 26, 2018, Ms. Boulet engaged in yelling and knocked items off my desk, talking about 'you people' and 'bad attitudes,' and then had someone call the police on me ...."[39] Newell further alleges that on October 11, [2018], she met with certain members of APC's board and "addressed, among other things, the racial and religious discrimination [she] was being subjected to."[40] She alleges that these board members told her that they would investigate her charges.[41] Nevertheless, she alleges that she was terminated from her position at APC by the board "on or about November 1, [2018], without any further discussion or communication regarding the unlawful discrimination Plaintiff had been subjected to," and that her position "was filled with a White male, Mr. Ron Czajkowski, a person outside [her] protected class."[42]

As with her promotion-related claims, Newell's amended complaint does not state a plausible Title VII disparate treatment claim based on her termination. As the Court explained in its prior Memorandum Ruling, Newell need not plead a Title VII claim with detailed factual allegations but the allegations supporting her claims must assert *facts*, not conclusions.[43] And,

---

[38] *See, e.g., Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 312 (5th Cir. 2010) (unpublished). In *Irons*, the plaintiff argued that "he was not given the opportunity to apply because [his employer] approached who they wanted for the positions and filled them." *Id.* According to the court, this allegation "without more, does not suggest 'a known and consistently enforced policy of discrimination' in [the employer's] promotion system." *Id.*
[39] ECF No. 13 at 3.
[40] *Id* at 4.
[41] *Id.*
[42] *Id.*
[43] Rule 8 does not require "detailed factual allegations," but "it demands more than 'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

those facts must be sufficient to show that Newell has a plausible claim of disparate treatment under Title VII based on her termination.

As far as Newell's allegations of race discrimination, she pleads no facts supporting an inference of racial bias as opposed to a conclusory allegation that her termination was on account of race discrimination.[44] Newell alleges that, after her termination, she was replaced by someone outside her protected group.[45] However, she alleges no specific policies or actions by APC that show racial bias, nor does she plead facts showing that, by terminating her, APC treated her less favorably than other similarly situated employees outside of her protected group. Newell's allegation that Boulet "knocked items off [her] desk, talking about 'you people' and 'bad attitudes,'" similarly does not support an inference of racial bias. The Fifth Circuit has held that "for comments in the workplace to provide sufficient evidence of discrimination, they must be '(1) related [to the protected class of persons of which the plaintiff is a member]; (2) proximate in time to the [complained-of adverse employment decision]; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue.' " Boulet's alleged statements to Newell do not satisfy these requirements. Courts in the Fifth Circuit have generally held that similar remarks, standing alone without any additional context, are racially neutral or "stray remarks" insufficient to support a Title VII claim.[46] Here, Newell pleads no other facts that permit an inference of racial bias from Boulet's remarks alone. Nor does Newell identify any other statements made by Boulet or others at APC—including APC's board—that demonstrate

---

[44] ECF No. 13 at 4.

[45] *Id.*

[46] *See, e.g., Douglas v. St. John Baptist Par. Libr. Bd. of Control*, No. CV 21-599, 2022 WL 898746, at *19 (E.D. La. Mar. 28, 2022) (supervisor's use of the term "you people," standing alone, was a "race-neutral" term that, "while Plaintiff may have subjectively felt they reflected discriminatory animus, are not objectively race-based statements."); *Stone v. Par. of E. Baton Rouge*, 329 F. App'x 542, 545 (5th Cir. 2009) (supervisor's use of the terms "you people" or "your people" did not support Title VII claim based on race discrimination).

racial bias or hostility. Accordingly, even accepting all well-pleaded facts as true, Newell has not pled facts that are sufficient to state a claim for race discrimination that "is plausible on its face."[47]

Newell's amended complaint adds more factual detail to her religious discrimination claim. Specifically, Newell alleges that:

> [s]tarting in 2017 and continuing throughout Plaintiff's employment with APC, including multiple instances in late 2018 and in 2019, Ms. Boulet: 1) would often admonish Plaintiff that she (Plaintiff) did not believe in God; 2) verbally stated, during Plaintiff's first annual evaluation (at which Ms. Bordelon was present), that "I know you don't believe in God but God loves you"; and 3) instructed Plaintiff to go to church and pray and that Plaintiff would then be amazed in the ways in which her life would change. On one occasion in early 2019, Ms. Boulet told Plaintiff to use her (Plaintiff's) lunch break to go to a local church on Pinhook Road in Lafayette, Louisiana and pray, and that if Plaintiff did so, she (Plaintiff) would get a promotion and see the "power of how God works." This repetitive proselytizing made Plaintiff dread going to work and caused her significant emotional pain.[48]

Again, however, Newell has not plead facts showing a connection between Boulet's alleged proselytizing in "late 2018 and early 2019," and her termination in November 2018. Indeed, much of the specific proselytizing activity cited by Newell appears to have occurred *after* she was allegedly terminated in November 2018 based on the timeline of her amended complaint.[49] Moreover, Newell's allegations pertaining to her interactions with APC's board in October and November 2018 identify no statements in connection with her termination that would support an inference of religious bias or that hostility to Newell's beliefs had a role in her termination.[50]

In sum, Newell has not pled sufficient facts to state claims for discrimination on the basis of race or religion that are plausible on their face. APC's motion to dismiss is therefore GRANTED with respect to Newell's Title VII disparate treatment claims.

---

[47] *Amacker*, 657 F.3d at 254.
[48] ECF No. 13 at 2.
[49] *Id.* (referring to "multiple instances in late 2018 and in 2019" and "one occasion in early 2019"). Newell provides no explanation for this discrepancy.
[50] Newell alleges that Boulet requested that she withdraw her complaint to APC's board and to "just pray about it." ECF No. 1 at 2. However, this stray comment is insufficient to support a Title VII religious discrimination claim.

### B. Title VII Hostile Work Environment Claim.

APC next challenges Newell's claim of a hostile work environment. A claim of race or religious-based harassment requires proof that the plaintiff "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or religion]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."[51] Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[52] Harassment is sufficiently "severe or pervasive enough" to create a hostile work environment when it is "objectively hostile or abusive"—meaning "an environment that a reasonable person would find hostile or abusive"—and is subjectively perceived by the victim as abusive.[53] The Supreme Court has "emphasized ... that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position."[54] This objective inquiry requires that the Court consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[55] "[N]o single factor is required."[56]

Newell's hostile workplace claim appears to be based on her allegations of discrimination based on religion and Boulet's alleged proselytizing during working hours:

> [s]tarting in 2017 and continuing throughout Plaintiff's employment with APC, including multiple instances in late 2018 and in 2019, Ms. Boulet: 1) would often

---

[51] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).
[52] *Id.*
[53] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).
[54] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).
[55] *Harris*, 510 U.S. at 23.
[56] *Id.*

> admonish Plaintiff that she (Plaintiff) did not believe in God; 2) verbally stated, during Plaintiff's first annual evaluation (at which Ms. Bordelon was present), that "I know you don't believe in God but God loves you"; and 3) instructed Plaintiff to go to church and pray and that Plaintiff would then be amazed in the ways in which her life would change. On one occasion in early 2019, Ms. Boulet told Plaintiff to use her (Plaintiff's) lunch break to go to a local church on Pinhook Road in Lafayette, Louisiana and pray, and that if Plaintiff did so, she (Plaintiff) would get a promotion and see the "power of how God works." This repetitive proselytizing made Plaintiff dread going to work and caused her significant emotional pain.[57]

Newell further alleges that, during her evaluation "in late 2018\early 2019, [Boulet] stated 'God loves me and I needed to pray.'"[58] Newell's allegations do not support a hostile workplace claim considering the frequency and nature of Boulet's alleged proselytizing. First, with respect to frequency, Newell she has not shown that Boulet's religious proselytizing was pervasive. The Fifth Circuit has observed that a hostile workplace claim does not require evidence of a single "smoking gun" incident to survive dismissal—a "continuous pattern of much less severe incidents can create an actionable claim."[59] In other words, if the alleged incidents are minor, a plaintiff must show that the incidents are sufficiently continuous that they "alter the conditions of plaintiff's employment and to create an abusive work environment."[60] Here, Newell's complaint identifies five discrete instances of proselytizing in late 2018 and 2019. Taking Newell's allegations as true, many or all of these discrete instances of proselytizing occurred *after* her termination on November 1, 2018. Even if some or all the alleged instances harassment occurred before Newell's termination, these five instances alone do not demonstrate a pervasive pattern of harassment. As explained by the Supreme Court, a hostile work environment for purposes of a Title VII claim is

---

[57] ECF No. 13 at 2.
[58] *Id.* at 4.
[59] *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011).
[60] *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010).

a workplace that is "permeated with discriminatory intimidation, ridicule and insult."[61] Newell's allegations do not rise to this level.

Furthermore, there is a more troubling discrepancy in Newell's allegations as far as the *source* of the proselytizing alleged by Newell. Newell's amended complaint identifies Boulet as the source of the religious proselytizing that allegedly created a hostile work environment.[62] Her EEOC charge, however, states that a *different* person, Rachel Godeaux, made the religious-based statements attributed to Boulet in the amended complaint.[63] This EEOC charge is expressly referenced in Newell's original complaint and APC attached the charge to its first motion to dismiss. As with the discrepancy in the dates, Newell does not explain this discrepancy between her EEOC Charge and her amended complaint. Nor does she identify Godeaux's position or role at APC. "'[D]ocuments that a defendant attaches to its motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim.'" "[W]hen a plaintiff does not attach a pertinent document to the complaint, a 'defendant may introduce the exhibit as part of his motion attacking the pleading.' "[64] When facts in a complaint are contradicted by facts disclosed in an exhibit that is treated as part of the complaint, the allegations are not admitted as true.[65] Here, based on these discrepancies between the EEOC charge, the original complaint, and the amended complaint, Newell's allegations do not state a plausible hostile work environment claim.

---

[61] *Harris,* 510 U.S. at 21.
[62] ECF No. 13 at 2-3.
[63] ECF No. 3-2 at 19.
[64] *Sheppard v. Texas Dept. of Transportation*, 158 F.R.D. 592, 595 (E.D. Tex. 1994); Charles Alan Wright, et al., 5A Federal Practice and Procedure: Civil § 1327 (3d ed. April 2016 update).
[65] *Carter v. Target Corp*., 541 Fed. App'x 413, 417 (5th Cir. 2013) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449 (7th Cir. 1998)("It is a well settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)(when attached documents contain statements that contradict the allegations in the complaint, the documents control and the court need not accept as true the allegations contained in the complaint.").

Even putting these discrepancies aside, Newell's allegations do not show conduct that is sufficiently severe to support a hostile workplace claim. While Boulet's alleged proselytizing may have offended Newell, the statements identified in Newell's complaint do not display the "discriminatory intimidation, ridicule and insult" typical of cases where courts have sustained a Title VII claim based on a hostile work environment. For example, one court sustained Title VII claim based on allegations that "employees with non-conforming [religious] views were ostracized and subject to intimidation, hostility, and abuse based on their religious beliefs and preferences." Newell's allegations do not show a pattern of conduct that rises to that level. Newell also does not allege that Boulet's proselytizing unreasonably interfered with her work performance.

In sum, Newell's allegations do not state a plausible Title VII claim based on a hostile work environment.[66]

**C. Title VII Retaliation Claim.**

Finally, APC challenges Newell's retaliation claim. To establish a prima facie case of retaliation under Title VII, Newell must show that "(1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action."[67] A "protected activity" under Title VII is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation,

---

[66] As in its first motion to dismiss, APC again argues that Newell failed to timely exhaust her administrative remedies with respect to the discrimination claims based on religion. As the Court explained in its prior memorandum ruling, the Fifth Circuit "interprets what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). The circuit does not require that an EEOC charge allege a prima facie Title VII case in order to satisfy the exhaustion requirement. *Id.* While Newell's EEOC Charge does not state a prima facia Title VII claim, it fairly encompasses the claims asserted in her complaint. The charge specifically references discrimination based on religion and race. The charge also refers to Newell's allegations that APC failed to promote her, and that it terminated her on the grounds of race and religion. ECF No. 3-2 at 19-20.

[67] *Newbury*, 991 F.3d at 678 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007)).

proceeding, or hearing under Title VII."[68] Title VII thus covers two distinct types of protected activity: (1) opposition to any practice rendered unlawful by Title VII (the "opposition clause"), and (2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII (the "participation clause").[69] Evidence that the plaintiff opposed the defendant's conduct, standing alone, does not satisfy the opposition clause. Rather, the clause "requires opposition *of a practice made unlawful by Title VII.*"[70] However, the Fifth Circuit has made clear that the standard is not whether the plaintiff can successfully state and support a Title VII claim but whether the plaintiff "*reasonably believes* the employment practice to be unlawful."[71] This "reasonable belief" standard acknowledges that there is "some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII."[72]

Here, Newell has pled sufficient facts with respect to her Title VII retaliation claim to survive dismissal under Rule 12(b)(6). Specifically, she has alleged that she engaged in a protected activity under the "opposition" clause by lodging a complaint with APC's board and requesting an investigation.[73] Newell alleges that she provided information to APC board members regarding her discrimination claims.[74] Newell's allegations are also sufficient to support a "reasonable belief" that her termination was unlawful for purposes of a Rule 12(b)(6) motion to dismiss. Newell also alleges that she was terminated, which qualifies as an adverse employment action.[75]

---

[68] *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 830–31 (E.D. La. 2012) (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)).
[69] *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 (2009).
[70] *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016) (emphasis in original).
[71] *Id.* (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1136 (5th Cir. 1981)) (emphasis added).
[72] *Id.* at 241.
[73] ECF No. 13 at 3-4.
[74] *Id.*
[75] Unlike a Title VII discrimination claim, an adverse employment action for purposes of a retaliation claim "need not rise to the level of ultimate employment decisions." *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 827 (5th Cir. 2019). Some Fifth Circuit cases had held that the "ultimate employment decision" requirement for Title VII discrimination cases applies equally to Title VII retaliation cases. *See, e.g., Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 708 (5th Cir. 1997) (the adverse employment action required to support a Title VII retaliation claim is limited to "ultimate employment decisions," for example "hiring, granting leave, discharging, promoting, and compensating").

Finally, Newell must plead facts showing causation. At the pleading stage, the causation standard is less stringent than the strict "but-for" causation standard.[76] A plaintiff need not show that the protected activity was the sole cause for retaliation, only that the two are "are not completely unrelated."[77] The employee may prove this through direct or circumstantial evidence.[78] At the pleading stage, a plaintiff can establish causation by showing a temporal proximity between the protected activity and the adverse employment action alone.[79] This temporal proximity must be "very close," and the Supreme Court has held that a period of three months is insufficient to show causation.[80] The Fifth Circuit's jurisprudence suggests that two and one-half months is the longest period that can, without more, show causation for retaliation purposes.[81] Here, Newell alleges that she lodged her complaint with APC's board in October 2018 and that she was terminated less than a month later, on November 1, 2018. Newell further alleges that Boulet requested that she withdraw her complaint to APC's board and "just pray about it."[82] Newell alleges that, after she lodged her complaint with the board, Boulet insisted that she be terminated.[83] These allegations are sufficient to show causation for purposes of a Rule 12(b)(6) motion to dismiss.

---

The Supreme Court abrogated this requirement for retaliation claims in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("We conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous… [and] therefore reject the standards applied in the Courts of Appeals that have treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision and that have limited actionable retaliation to so-called 'ultimate employment decisions.'") Accordingly, the standard for an adverse employment action in the context of a retaliation claim is an employment action that is "materially adverse, such that it would dissuade a reasonable employee from making a discrimination complaint." *Newberry*, 991 F.3d at 678. Under either standard, Newell's termination qualifies as an adverse employment action. *Rodrique v. PTS Mgmt. Group, LLC*, 550 F. Supp. 3d 376, 402 (W.D. La. 2021).

[76] *Newberry*, 991 F.3d at 678.

[77] *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020).

[78] *McCoy*, 492 F.3d at 556.

[79] *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (citations omitted).

[80] *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

[81] *Brown,* 969 F.3d 578 (noting that the court has held periods of six-and-a-half weeks, two months, and two-and-a-half months to be close enough to show a causal connection).

[82] ECF No. 1 at 2.

[83] ECF No. 13 at 4.

In sum, Newell's retaliatory discharge allegations address each of the essential elements of her retaliatory discharge claim under Title VII. Accordingly, the Court DENIES the Motion to Dismiss with respect to this claim.

## IV.
## CONCLUSION

For the foregoing reasons, the Court GRANTS APC's Motion to Dismiss [ECF No. 17] in part and DENIES the motion in part. Newell's disparate treatment and hostile work environment claims under Title VII are DISMISSED.

THUS DONE in Chambers on this 25th day of October, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE